PITMAN, J.
11 Plaintiff-Appellant Mack Buddy Maxwell, Jr., appeals the trial court’s judgment of partition in favor of Defendant-Appellee *1229 Brooke Pauline Bennett Maxwell. Por the following reasons, we affirm.
FACTS
On July 21, 2011, Mr. Maxwell filed a petition for divorce pursuant to La. C.C. Arts. 102 and 103.1(2). He stated that he and Mrs. Maxwell married on October 14, 2001, and separated on June 14, 2011. On March 16, 2012, the trial court filed a judgment retroactively terminating the Maxwells’ community of acquets and gains to July 21, 2011. On May 10, 2012, a judgment of divorce was granted. On February 27, 2013, Mrs. Maxwell filed a petition to partition community property.
A trial on the partition began on July 20, 2015.[1] The parties introduced into evidence a joint detailed descriptive list. They stipulated as to the value of the six pieces of immovable property and established the value and ownership of movables.
The trial continued on October 28, 2015. The parties discussed the Ouachita Independent Bank Money Market Checking Account # 3550 (the “OIB Account”). Mr. Maxwell argued that this account, which contained $15,020.29, was his separate property. He testified that he opened the OIB Account in his name in September 2010 with a $10,000 deposit. He stated that the deposit came from a retirement account he closed, and he noted that he had the retirement account prior to his marriage. He explained that he | ¿first deposited these funds into a joint account because he did not have a separate account and then he wrote a check from the joint account to open the OIB Account. Mrs. Maxwell testified that Mr. Maxwell had the retirement account prior to their marriage and that it was “his separate stuff.” The trial court noted that the funds to open the OIB Account were channeled through a joint account, which is akin to commingling. It stated that Mr. Maxwell did not overcome the presumption that property in the possession of a spouse during the community property regime is community property and determined that the OIB Account is community property.
The parties then discussed the mortgage debt on their home located at 1919 Landau Lane in Bossier City (the “Landau property”). Mr. Maxwell testified that he purchased the Landau property in July 2001, several months before his October 2001 marriage to Mrs. Maxwell. He stated that the original mortgage (i.e., the “Chase Mortgage”) was for approximately $139,000, and then he refinanced it in 2002. He stated that, after 2002, Mrs. Maxwell never assumed the debt with him on the Chase Mortgage, noting that she did not refinance the mortgage with him, that she was not added as a borrower on the mortgage and that she “had to sign off on it as saying it was . separate property.” He further stated that he was not asking the trial court to declare the Chase Mortgage a community debt, but noted that Mrs. Maxwell is on a second mortgage on the Landau property.
Mr. Maxwell further testified that, prior to his marriage to Mrs.-Maxwell, he was in the mortgage business and also purchased and sold real estate. He stated that he used a line of credit with Regions Bank (the “Regions Debt”) to purchase real estate and continued to use his separate line of credit after the marriage because Mrs. Maxwell had poor credit and Rcould not qualify for any type of mortgage. He explained that he purchased properties on his line of credit in his name and then refinanced them and added Mrs. Maxwell to the title so she was a joint owner, but he *1230 was responsible for the mortgage. He stated that they did this for three or four property purchases until Mrs. Maxwell’s credit improved. In December 2006, they opened a joint line of credit with OIB to purchase homes (the “OIB Line”), and the Landau property was collateralized on the OIB Line. He noted that Mrs. Maxwell worked in the mortgage and real estate business with him. They purchased 13 properties during the marriage, and the income from the sales of the properties was put into a joint Certificate of Deposit (the “CD”). In September 2004, Mr. Maxwell entered into an agreement with Mrs. Maxwell to donate to her a one-half interest in the equity of the Landau property. He testified that, in the summer of 2009, he developed liver failure and was not expected to survive. He noted that Mrs. Maxwell drew on the OIB Line to keep their businesses going. During this time, he donated additional property to Mrs. Maxwell (the “2009 donation”). He contended that this asset donation was subject to the debts associated with the property and read the following from the 2009 donation, which stated: “The property donated herein shall be subject to any debt on any outstanding mortgages and liens.” He noted that some of the property was used as collateral on debts, including the Regions Debt. He stated that Mrs. Maxwell was fully aware of the debt that existed because she worked with him in the real estate business. He testified that he received a liver transplant, and then Mrs. Maxwell donated back to him a one-half interest in some properties and a full interest in other properties. He further testified that, on January 3, 2011, he made a draw on the OIB Line for $209,POOL which he used to pay off his Regions Debt. He noted that, prior to this transfer, he and Mrs. Maxwell owed approximately $23,000 on the OIB Line. The next month OIB redeemed the CD to pay down the OIB Line balance.
The parties then discussed the expenses associated with rental income. Counsel for Mr. Maxwell noted that they had previously established the amount of the income, but had not yet presented evidence as to the expenses associated with the rental property. Counsel for Mrs. Maxwell contended that such evidence was not timely produced and that it consisted of handwritten ledgers, but no receipts for expenses or proof of payments. The trial court allowed Mr. Maxwell to submit additional documents (“Exhibit M-13”), and Mrs. Maxwell objected.
The parties also discussed Mr. Maxwell’s premarital debt and Mrs. Maxwell’s corresponding reimbursement claim. Mrs. Maxwell’s counsel contended that this reimbursement claim hinged on the trial court’s ruling regarding the classification of the Chase Mortgage. Counsel noted that, if it is classified as Mr. Maxwell’s separate debt, Mrs. Maxwell may be precluded from receiving the reimbursement claim because she lived in the Landau property with Mr. Maxwell. Counsel for Mr. Maxwell argued that, although the debt began as a separate debt, it evolved into a community debt.
On December 11, 2015, the trial court filed its ruling. It admitted into evidence Exhibit M-13 for the purpose of determining the credit owed to Mr. Maxwell for the expenses used for the preservation of community assets. It found that the Chase Mortgage is a separate debt and obligation of Mr. Maxwell. Regarding the OIB Line, it found that the evidence demonstrated the existence of a premarital debt and post-marital separate Ldebt incurred by Mr. Maxwell and that certain funds were utilized to satisfy these obligations. Accordingly, it awarded reimbursement to Mrs. Maxwell for her half of the community funds utilized to satisfy the separate obligations of Mr. Maxwell.
*1231 On March 17, 2016, arguments were held for the purpose of allocating six pieces of immovable property and one mortgage debt so that equalization and reimbursement could be calculated and a written judgment prepared. On April 20, 2016, the trial court filed a ruling in which it allocated the six pieces of immovable property—assigning three to each party. It also determined the equalization payment owed and the reimbursements owed.
On June 16, 2016, the trial court filed a judgment to partition community property. Relevant to this appeal, the judgment stated that Exhibit M-13 was admitted as to give credit to Mr. Maxwell for payment of tax, insurance and repairs directly related to a community asset; that the Chase Mortgage was the separate debt of Mr. Maxwell; and that the OIB Line was the separate debt of Mr. Maxwell.
On June 16, 2016, Mr. Maxwell filed a motion for new trial. Following a hearing, the trial court denied the motion on July 21, 2016.
Mr. Maxwell appeals the judgment of the trial court.
DISCUSSION
A trial court has much discretion in valuing and allocating assets and liabilities in community property partitions and must consider the source and nature of each asset or liability, the financial situation of the other spouse and any other relevant circumstances. Dupree v. Dupree, 41,572 (La.App. 2 Cir. 12/20/06), 948 So.2d 254. A trial court’s factual findings and credibility determinations made in the course of valuing and allocating! B assets and liabilities in the partition of community property may not be set aside absent manifest error. Clemons v. Clemons, 42,129 (La.App. 2 Cir. 5/9/07), 960 So.2d 1068, cm reh’g (7/11/07), writ denied, 07-1652 (La. 10/26/07), 966 So.2d 583.

Assumption of the Home Mortgage Indebtedness

Mr. Maxwell argues that the mortgage indebtedness (i.e., the Chase Mortgage and the OIB Line) is a community obligation, not his separate obligation. He contends that the trial court erred when it determined that the 2009 donation transferred an ownership interest in the Landau property to Mrs. Maxwell, but did not cause her to assume the mortgage indebtedness associated therewith. He states that, if Mrs. Maxwell claims an ownership in the Landau property, then she is also bound to take responsibility for the Chase Mortgage. He further argues that the history of the debt proves that it was jointly owned. He states that the use of the OIB Line was clearly for the common interest of the spouses and was, therefore, a community obligation.
Mrs. Maxwell argues that at no time did she sign any documentation binding herself as an obligor to any mortgage secured by the Landau property. She contends that Mr. Maxwell admitted in his testimony that the Landau mortgage debt was his separate debt. She states that the evidence presented at trial demonstrates the separateness of Mr. Maxwell’s debt and does not support his claim that the transfer of his Regions Debt to their OIB Line benefited her.
An obligation incurred by a spouse may be either a community obligation or a separate obligation. La. C.C. Art. 2359. An obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spousej 7 is a community obligation. La. C.C. Art. 2360. Except as provided in La. C.C. Art. 2363, all obligations incurred by a spouse during the existence of a community property regime are presumed to be community obli *1232 gations. La. C.C. Art. 2361, La. C.C. Art. 2363 states:
A separate obligation of a spouse is one incurred by that spouse prior to the establishment of a community property regime, or one incurred during the existence of a community property regime though not for the common interest of the spouses or for the interest of the other spouse.
An obligation resulting from an intentional wrong or an obligation incurred for the separate property of a spouse is likewise a separate obligation to the extent that it does not benefit both spouses, the family, or the other spouse.
Although Mr. Maxwell emphasizes that the 2009 donation provides that “The property donated herein shall be subject to any debt on any outstanding mortgages and liens,” this clause does not cause Mrs. Maxwell to assume the mortgage. Mrs. Maxwell did not explicitly agree to assume a mortgage or lien on the Landau property. As donee, she gained the property subject to,a mortgage, not the mortgage itself. Therefore, the 2009 donation did not cause Mr. Maxwell’s separate mortgage debt to become a community obligation.
Mr. Maxwell purchased the Landau property and acquired the Chase Mortgage on the Landau property prior to his marriage with Mrs. Maxwell. At trial, when asked if Mrs. Maxwell ever assumed the Chase Mortgage debt with him, he testified that she did not. He explained that he was not asking the trial court to declare the Chase Mortgage a community obligation and admitted that Mrs. Maxwell did not owe this debt. The Chase Mortgage is clearly Mr. Maxwell’s separate obligation.
The evidence presented regarding the history of the OIB Line does not demonstrate that it was for the common interest of the spouses. On|s November 11, 2010, the Maxwells had a community debt on the OIB Line of $22,961.50. On January 3, 2011, Mr. Maxwell transferred his separate Regions Debt of $209,372.88 to the OIB Line. On February 16, 2011, OIB required Mr. Maxwell to cash out the CD and pay it toward the OIB Line balance. The CD was valued at $126,121.69; $22,961.50 was used to pay the community debt and $103,160.19 was used to pay down Mr. Maxwell’s separate debt. Therefore, the debt remaining on the OIB Line was Mr. Maxwell’s separate obligation.
The trial court was not manifestly erroneous when it determined that the mortgage debt is Mr. Maxwell’s separate obligation. Accordingly, Mr. Maxwell’s argument lacks merit.

Reimbursement to Mrs. Maxwell

Mr. Maxwell argues that the trial court erred in finding that Mrs. Maxwell is due reimbursement in the amount of $51,000. He contends that the mortgage debts are jointly owned community debts and, therefore, no reimbursement is due.
Mrs. Maxwell argues that she is entitled to be reimbursed in the amount of $51,800.95, i.e., one-half of the amount used to pay Mr. Maxwell’s separate debt.
A spouse may have a claim against the other spouse for reimbursement. La. C.C. Art. 2358. If community property has been used during the existence of the community property regime or former community property has been used thereafter to satisfy a separate obligation of a spouse, the other spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. La. C.C. Art. 2364.
IsAs discussed above, the trial court did not err when it determined that the mortgage debt is Mr. Maxwell’s separate debt. Therefore, the trial court did not err in determining that Mrs. Maxwell is due reimbursement because community proper *1233 ty, i.e., the CD, was used to satisfy Mr. Maxwell’s separate obligation, i.e., the OIB Line.
We note the discrepancy between the $51,000 reimbursement awarded to Mrs. Maxwell and the $51,800.95 amount calculated by Mrs. Maxwell. The record suggests that the $51,000 amount was calculated with round numbers, i.e., the $22,961.50 community debt became $23,000 and the $126,121.69 CD became $126,000. Therefore, it was calculated that $102,000 of community funds was used to pay Mr. Maxwell’s separate debt, one-half of which is $51,000. We note that Mrs. Maxwell does not request that the judgment be amended to increase the reimbursement due to $51,800.95, and does, in fact, contend that it should be affirmed. Therefore, we will not disturb the calculation of the reimbursement due to Mrs. Maxwell.
Accordingly, Mr. Maxwell’s argument lacks merit.

The OIB Account

Mr. Maxwell argues that the trial court erred when it determined that the OIB Account was community property, and he contends that the $10,000 is his separate property. He contends that the trial court improperly found that a sum that was withdrawn from his separate funds, deposited into a joint account for eight days and then transferred to his separate account did not remain his separate property.
Mrs. Maxwell argues that the trial court correctly determined that the OIB Account is a community asset. She states that Mr. Maxwell made a |1f)deposit of $40,988.91 of his separate funds into their joint account and then wrote two checks from that account—one for $10,000 and one for $50,000. She contends that the issue is not about the comingling of funds, but, rather, that he withdrew funds that exceeded the amount of his deposit.
Property of married persons is either community or separate, subject to certain exceptions not applicable to this case. La. C.C. Art. 2335. Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property. La. C.C. Art. 2340. The spouse seeking to rebut the presumption bears the burden of proving the property is separate in nature. Statham v. Statham, 43,324 (La.App. 2 Cir. 6/11/08), 986 So.2d 894, writ denied, 08-1578 (La. 10/10/08), 993 So.2d 1288.
When separate and community funds are deposited into one bank account, this fact does not convert the entire account into community property. Fulco v. Fulco, 50,256 (La.App. 2 Cir. 11/18/15), 183 So.3d 573. Only when separate funds are commingled with community funds indiscriminately so that the separate funds cannot be identified or differentiated from the community funds are all the funds characterized as community funds. Curtis v. Curtis, 403 So.2d 56 (La. 1981).
The evidence presented at trial shows that, on September 7, 2010, Mr. Maxwell made a deposit of $40,988.91 into a joint bank account he owned with Mrs. Maxwell that previously had a balance of approximately $23,000. Mr. Maxwell testified that this was a deposit of his separate funds, and approximately $13,000 of this amount came from closing a retirement account he had before the marriage. On September 15, 2010, he wrote one check from the joint account for $10,000 to open the OIB Account and a Insecond check for $50,000 to acquire the CD. The trial court determined that the funds used to open the OIB Account were commingled funds and that Mr. Maxwell did not overcome the presumption of community.
*1234 Because the amount Mr. Maxwell withdrew, i.e,, $60,000, exceeded the amount of separate funds he deposited, i.e., $40,988.91, approximately $19,000 of community funds was used by Mr. Maxwell to open the OIB Account and to purchase the CD. The evidence presented by Mr. Maxwell at trial did not demonstrate that the $10,000 he withdrew to open the OIB Account was solely from the separate funds he deposited. By withdrawing funds in an amount that exceeded the amount of separate funds he deposited, his separate funds became indiscriminately comingled with the community funds so that the separate funds could not be identified or differentiated from the community funds. Therefore, the trial court was not manifestly erroneous when it determined the OIB Account is community property.
Accordingly, Mr. Maxwell’s argument lacks merit.

Rental Expenses

Mr. Maxwell argues that the trial court erred in allowing counsel for Mrs. Maxwell to determine what expenses could be deducted from gross rental proceeds because counsel knew that the smaller the deduction, the more income his client gained. He states that counsel for Mrs. Maxwell gave him a partial credit and allowed for deduction for the taxes, insurance and repairs in the amount of $10,709.22; and, thus, the detailed descriptive list showed that Mr. Maxwell received income of $39,015.78. He contends that the taxes, insurance and repairs should have totaled $23,944.60, so the net rental income on the detailed descriptive list should have been $25,780.40.
[12Mrs. Maxwell states that Mr. Maxwell received $49,725 in rental income between December 2012 and July 2014. She contends that he never produced documentary evidence of rental income and expenses. She argues that Exhibit M-13 should not have been admitted into evidence and that Mr. Maxwell should not have received credit.
The trial court stated that Mr. Maxwell was entitled to a credit for expenses used for the preservation of a community asset if the amounts claimed could be directly tied by documentation to the community asset. It reviewed the evidence and determined that Mr. Maxwell proved that he spent $10,709.22 in taxes, insurance and repairs to preserve a community asset. Although Mr. Maxwell attempted to prove additional expenses by producing documents on the day of trial, the trial court denied the admission of these documents because “more than ninety days had elapsed between the continuation of the trial and ample opportunity to provide said documents to opposing counsel existed.” The trial court was not manifestly erroneous when it determined the amount of the credit owed to Mr. Maxwell fór expenses used for the preservation of a community asset.
Accordingly, Mr. Maxwell’s argument lacks merit.

Rental Profit Payments

Mr. Maxwell argues that the trial court erred when it failed to give credit to him for the payments he voluntarily made to Mrs. Maxwell from house rental proceeds. He notes that there was no court order or judgment requiring him to make these payments, but that, out of fairness, he paid to Mrs, Maxwell approximately one-half of the net rental income he received, amounting to $9,895. He contends that it is unfair to ignore these payments because Mrs. Maxwell will receive double recovery.
[ lsThe trial court reviewed the evidence presented by Mr. Maxwell, including copies of checks from him to Mrs. Maxwell. In its ruling, it stated:
*1235 The Court is unaware for what purpose copies of checks designated as 37E and made apart [sic ] of M-13, in globo, are being offered. The Court does not feel that these checks to Mrs. Maxwell are relevant nor can they be utilized to offset the value assigned to that asset.
A review of the evidence supports the trial court’s finding that Mr. Maxwell did not demonstrate the purpose of producing these checks. He vaguely labeled the exhibit as “Brooke Payments,” and the checks do not include information in the memo line to explain their purpose. The trial court acted within its discretion and was not manifestly erroneous when it did not award Mr. Maxwell a credit for what he alleged were rental payments to Mrs. Maxwell.
Accordingly, Mr. Maxwell’s argument lacks merit.
CONCLUSION
For the foregoing reasons, we affirm the trial court’s judgment of partition in favor of Defendant Brooke Pauline Bennett Maxwell and against Plaintiff Mack Buddy Maxwell, Jr. Costs of this appeal are assessed to Mack Buddy Maxwell, Jr.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, MOORE, PITMAN and COX, JJ.
Rehearing denied.

. We note that throughout the trial, the trial court did a commendable job in allowing the parties to present and argue their respective positions and in conducting an ad-hoc-like bidding auction to resolve and award the movable assets of the former community.