Judgment rendered August 11, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,022-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

J. PATTON MABRAY, JR.                    Plaintiff-1st Appellant

versus

SARAH MCSHERRY MABRAY                    Defendant-2nd Appellant

* * * * *

Appealed from the
Sixth Judicial District Court for the
Parish of Tensas, Louisiana
Trial Court No. 23,370

Honorable Jimmie C. Peters (*Ad Hoc*), Judge

* * * * *

AYRES, SHELTON, WILLIAMS,                Counsel for
BENSON & PAINE, LLC                      1st Appellant
By: Curtis Ray Shelton


BISHOP, PAXTON, CRIGLER &
MOBERLEY
By: James Edward Paxton
    John Durham Crigler, Jr.


S. DOUGLAS BUSARI & ASSOCIATES, LLC   Counsel for
By: S. Douglas Busari                    2nd Appellant


* * * * *

Before GARRETT, THOMPSON, and HUNTER, JJ.

**THOMPSON, J.**

This appeal primarily arises as a dispute over valuations assigned by the trial court in a partition of community assets formerly existing between the parties. The parties married in 1977, separated in 1989, and filed for divorce in 1991, but no partition action was ever pursued by either party until 2008, which then mostly lay dormant until it eventually went to trial in 2019. Thirty years to the month after the parties divorced, this dispute over partitioning their community comes before us. For the following reasons, we affirm in part and reverse in part and remand to the district court for further proceedings.

## FACTS & PROCEDURAL HISTORY

J. Patton Mabray ("Mabray") and Sarah McSherry Mabray ("McSherry") were married on June 25, 1977, and established their domicile in Tensas Parish. In 1988, during the existence of the community of acquets and gains, Mabray formed P & S Farms Partnership for the purpose of taking advantage of federal farm subsidies and for advantageous sheltering of income for tax purposes. The only other partner initially to P & S Farms was McMabes, Inc., a family-owned corporation. During the marriage Mabray and McSherry constructed their residence on separate property owned by Mabray. Various other assets in connection with farming operations and recreational pursuits were acquired by the couple. The couple separated in 1989. Mabray apparently retained use and possession of all the property belonging to the community with the exception of some furniture and one vehicle, which McSherry took when she left the residence.

On July 10, 1991, Mabray filed for divorce in Ouachita Parish, noting the parties had separated in 1989. A judgment of divorce was granted on August 15, 1991. Sixteen years later, on January 14, 2008, in a separate proceeding filed in Tensas Parish, Mabray sought to partition the former community property. An *ad hoc* appointment was required after recusal of the judges of the 6th Judicial District Court. Another eleven years go by, during which there are many delays and discovery is fraught with allegations being exchanged of uncooperative behavior. A trial on the merits was finally held on July 25, 2019. The trial court issued a detailed 68-page opinion containing 61 footnotes. Mabray filed a motion for new trial, which was heard on November 6, 2019. The trial court ruled that Mabray was entitled to some of the relief sought and amended and rewrote its original judgment addressing the concerns raised in the motion for new trial. On December 11, 2019, the trial court issued a 27-page detailed *Judgment on the Motion for New Trial*, from which Mabray has sought an appeal and asserted nine assignments of error from among the numerous findings of the trial court.

### STANDARD OF REVIEW

It is well settled that a trial court has broad discretion in adjudicating issues raised by divorce and partition of the community. A trial judge is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses. Factual findings and credibility determinations made by the trial court in the course of valuing and allocating assets and liabilities in the partition of community property may not be set aside absent manifest error. *Politz v. Politz*, 49,242 (La. App. 2 Cir. 9/10/14), 149 So.3d

2

805 (citing *Clemons v. Clemons*, 42,129 (La. App. 2 Cir. 5/9/07), 960 So.2d 1068, *writ denied*, 07-1652 (La. 10/26/07), 966 So. 2d 583); *Mason v. Mason*, 40,804 (La. App. 2 Cir. 4/19/06), 927 So. 2d 1235, *writ denied*, 06-1524 (La. 10/13/06), 939 So. 2d 366).

**DISCUSSION**

Parties to a partition of their former community property are entitled to and should expect a fair valuation and assignment of assets, which process necessarily takes into consideration any debts or liens associated with the community assets to determine a true net value. The parties are very much stakeholders in that process, having unique knowledge of the history and extent of the assets, any corresponding debts, and information imperative for a disinterested valuation of each item by the court. Recalcitrant parties in the process of identifying and valuing assets have only themselves to blame for any decisions of the trial court they believe are based on incomplete information. The trial court is tasked with partitioning the accumulation of assets and assigning any liabilities.

The parties had 30 years from the granting of divorce and 13 years from the original filing to partition the community property, during which they could have amicably partitioned their community assets, completed detailed descriptive lists, retained experts, and had time for in-depth discovery in order to bolster their position and assignment by each of values and legal positions with the trial court. The trial court, in two opinions totaling 95 pages, has gone to great lengths to detail the challenges in extracting from the parties the necessary information regarding assets and

3

debts and has provided insight into the extensive deliberative process which culminated in his conclusions.

From the judgment of the trial court, Mabry has asserted nine assignments of error.

**Assignment of Error Number 1:** **The trial judge's awards of pre-judgment judicial interest were legal error.**

Mabray first asserts that the trial judge erred in awarding prejudgment legal interest to McSherry, contrary to the Louisiana Supreme Court's decision in *Reinhardt v. Reinhardt*, 97-0723 (La. 10/19/99), 748 So. 2d 423. In *Reinhardt*, the Supreme Court determined that prejudgment interest is not due on equalizing payments made as part of a partition of community property, even though part of the equalizing payment could be traced to a reimbursement claim. *Id*. We disagree with Mabray's reliance on *Reinhardt* under the facts present in this matter.

In *Reinhardt*, *supra*, the Supreme Court addressed the interest due on equalizing payments made. In this case, while the trial court classified the payments as "equalizing" in its first judgment, it subsequently clarified this classification upon Mabray's motion for new trial. The trial court specified in the judgment on motion for new trial that the sums awarded were not equalizing payments but, rather, division of cash awards due to McSherry because Mabray had taken the funds for his sole use after the parties separated. The term of art, "interest," was clearly intended to refer to the share of community owned by and owed to McSherry and not the financial term of the assessment of a sum charged on money owed. We cannot find, either in the original judgment or judgment on motion for new trial, any assertions by the trial court that the monies awarded were equalizing

4

payments to McSherry due to an unequal net distribution of assets. Rather, they are a valuation of her ownership interest, and therefore, we find Mabray's first assignment of error to be without merit.

**Assignment of Error Number 2:** **The trial judge's awards for Mr. Mabray's post-termination income earned from his operation of the Somerset Hunting Club were legal error.**

In his next assignment of error, Mabray asserts that the trial court erred in awarding McSherry income earned from his operation of the Somerset Hunting Club. This assignment of error has merit. Community property comprises property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse. La. C.C. art. 2338.

After termination of the community property regime, the provisions governing co-ownership apply to former community property, unless otherwise provided by law or by juridical act. La. C.C. art. 2369.1. Each spouse owns an undivided one-half interest in the former community property and its fruits and products. La. C.C. art. 2369.2. The term "civil fruits" is defined in La. C.C. art. 551 as "revenues derived from a thing by operation of law or by reason of juridical act, such as rentals, interest, and certain corporate distributions." This court is now tasked with the issue of whether the trial court was manifestly erroneous in its determination that McSherry is entitled to one-half of the profits generated by Somerset Hunting Club from the period after the termination of the community, 1992 to 2018, and to determine the proper classification of funds/wages paid to Mabray.

5

It is not challenged that Somerset Hunting Club was established during the existence of the community in 1986 and is therefore community property. However, the profits/distributions at issue with regard to Somerset Hunting Club came into Mabray's possession *after* the termination of the community and do not carry the presumption of community. *Lanza v. Lanza*, 04-1314 (La. 3/2/05), 898 So. 2d 280. The burden then fell to McSherry to prove the profits/distributions were community assets. A distribution of profit to the owners is distinctly different from wages paid specifically for labor. Mabray testified at trial the he does "the running part of" Somerset Hunting Club and that his cousin (and sole partner in the hunting club) lives in north Arkansas. Therefore, Mabray "tends to the day to day business." By implication of *Lanza*, wages earned by a spouse for work performed *after* the termination of the community are separate property. The money received by Mabray was the result of his efforts, and, therefore, should be considered similarly as wages for his efforts and not a community asset. Accordingly, the district court erred in awarding McSherry sums totaling $180,000 for her one-half interest in the profits/distributions of Somerset Hunting Club from 1992 to 2018, and that award is hereby reversed.

Notwithstanding the above, McSherry would be entitled to her undivided one-half interest in the value of Somerset Hunting Club, since it is community property and was established during the existence of the community. There exists insufficient evidence in the record before us to determine the value of Somerset Hunting Club, other than the income generated and disbursed. Considering the foregoing, we reverse the award

of the trial court of McSherry's interest in the funds distributed by Somerset Hunting Club and remand to the trial court for further proceedings relative to fixing a value for Somerset Hunting Club and determination of McSherry's share of that value and its inclusion in the total award to her.

**Assignment of Error Number 3:** **The trial judge committed legal error or manifest error in awarding Ms. McSherry $9,000 for the use of the 28-year old party barge.**

Mabray next contends that the trial court erred in awarding McSherry $9,000 for the use of a party barge owned by the parties during the marriage. Under La. R.S. 9:2801(A)(4)(a), the trial court shall value the assets as of the time of trial on the merits. Either party was free to seek partition of the community, contemporaneous with the 1991 filing for divorce or after. That the court is left to untangle, thirty years after the date of divorce, the location, condition, and value of community assets is, as was described at oral arguments, the equivalent of legal archaeology. To complicate the process, the parties did not submit evidence of the current value of community assets. In such situations, the trial court does not err in making its valuations based on the evidence presented by the parties. *Ellington v. Ellington*, 36,943 (La. App. 2 Cir. 3/18/03), 842 So. 2d 1160, *writ denied*, 03-1092 (La. 6/27/03), 847 So. 2d 1269.

The trial court has broad discretion in partitioning community property. The Third Circuit noted in *Razzaghe-Ashrafi v. Razzaghe-Ashrafi*:

> The purpose of [La. R.S. 9:2801(A)(4)(a)] is to provide an occasion for the court to get a handle on the situation. It does not mean that the court is frozen by any statutory time level or particular valuation at any particular time or for any particular purpose, but simply to place values on the assets for the purpose of accounting, allocation and adjudication in accordance with the further provisions of La. R.S. 9:2801(4)(b, c, d and e).

*Razzaghe-Ashrafi v. Razzaghe-Ashrafi*, 558 So. 2d 1368 (La. App. 3 Cir. 1990). Since broad discretion is granted to the trial court by La. R.S. 9:2801, the court is not required to accept at face value a party's valuation of assets, debts, or claims against the community. *Gay v. Gay*, 31,974 (La. App. 2 Cir. 6/16/99), 741 So. 2d 149. If the trial court's valuations are reasonably supported by the record and do not constitute an abuse of discretion, its determinations should be affirmed. In the absence of values to the contrary, the court below was left to establish values in a vacuum or without full involvement and cooperation of both parties.

In her amended detailed descriptive list, McSherry listed the party barge's value at $18,000. Mabray did not list the party barge on his detailed descriptive list or traversal. At trial, Mabray acknowledged that he had possession of the party barge, that he had retained possession since the parties physically separated, and that the barge was indeed community property. Mabray also testified that the barge had fallen into disrepair and he stripped it down and made a fishing platform out of it. Additionally, Mabray said he "hadn't laid eyes on it in 8 or 10 years." However, at trial, Mabray never offered any documentation or testimony as to the barge's value as of the time of trial. As a result, the trial court was confronted with no competing value to take into consideration when tasked with fixing a value on this particular asset.

The opportunity to establish a value for community assets is provided by filing a detailed descriptive list and calling any supporting witnesses to substantiate the rationale for valuations. Likewise, the opportunity to dispute a value included in opposing party's detailed descriptive list is to file

8

a traversal of that item and call any supporting witnesses to substantiate the traversal and alternative valuation. Mabray complains of the result of the trial court's valuation without providing it with information in the form of a detailed descriptive list, traversal, or other information.

Without any other evidence being introduced or testimony being given as to the value of the party barge, the court had no other available means to determine the value except to accept McSherry's value of $18,000. Since the court awarded the barge to Mabray, McSherry would be entitled to one-half of its determined value under the law. Therefore, we cannot find that the trial court erred in awarding McSherry $9,000 for the party barge, and accordingly, Mabray's assignment of error is without merit.

**Assignment of Error Number 4:** **The trial judge erred in awarding Ms. McSherry $140,000 for "her share of the dividends and interest which was generated as community property," with no evidence, and certainly insufficient evidence, that $280,000 of accumulated dividends and interest had existed and remained in Mr. Mabray's possession as of the termination of the community.**

Mabray next asserts that the trial court erred in awarding McSherry $140,000 as her share of dividends and interest generated from community stocks and bonds. In her initial detailed descriptive list, McSherry listed "Numerous Stocks and Bonds," but provided a value as "unknown." In his detailed descriptive list, Mabray listed a large amount of securities but asserted they were his separate property. Thereafter, in her amended detailed descriptive list, McSherry asserted that the "dividends" from those securities accounts were community, but the amount thereof remained unknown.

First, we must determine if the "dividends" from the securities accounts were Mabray's separate property or property belonging to the

9

community.  Property of married persons is either community or separate, except as provided by Article 2341.1.  La. C.C. art. 2335.  The classification of property as either separate or community is fixed at the time of its acquisition.  *Gay, supra*.  Property in the possession of a spouse during the existence of the community property regime is presumed to be community, but either spouse may rebut the presumption.  La. C.C. art. 2340.  The spouse seeking to rebut the presumption bears the burden of proving that the property is separate in nature and that proof must be fixed, clear, positive, and legally certain.  *Tolar v. Tolar*, 28,202 (La. App. 2 Cir. 4/3/96), 671 So. 2d 1234.

Fruits are things that are produced by or derived from another thing without diminution of its substance.  La. C.C. art. 551.  That article defines civil fruits as revenues derived from a thing by operation of law or by reason of a juridical act, such as rentals, interest, and certain corporate distributions.  Cash dividends from separately owned stock are fruits since they come from the surplus of the corporation and do not cause a diminution in the substance of the principal thing.  Andrea Carroll & Richard D. Moreno, *Matrimonial Regimes*, in 16 La. Civ. L. Treatise § 3:00 (4th ed. 2019).  They are community property unless the appropriate declaration is filed.  *Id*.

According to his testimony at trial, Mabray contends that the stocks at issue were gifts to him alone by either his parents or grandparents and produced "a little" dividend of $20,000 per year for the years 1977 to 1991.  McSherry does not dispute that these stocks are Mabray's separate property.  Rather, she contends that the dividends produced by those stocks are fruits of separate property belonging to the community under La. C.C. art. 2339.

10

A spouse may reserve such fruits as his separate property by a declaration made in an authentic act or in an act under private signature duly acknowledged and a copy of the declaration shall be provided to the other spouse prior to filing. La. C.C. art. 2339. Mabray testified both in his deposition and at trial that he did not file a declaration reserving the dividends as his separate property. The absence of such a declaration resolves the issue, and the fruits of Mabray's separate property would be community assets.

The only testimony or evidence presented as to the value of the dividends came directly from Mabray. The trial court used his testimony to determine that $20,000 in dividends per year would accumulate from the stocks. Using this figure, we find that the trial court correctly found that McSherry is entitled to $140,000 as payment for her one-half share of the $20,000 in annual cash dividends per year from 1977 until the termination of community by the granting of the judgement of divorce in 1991. Mabray's assignment of error is without merit.

**Assignment of Error Number 5:** **The trial judge erred in awarding Ms. McSherry an equalizing payment of $125,000 "because community funds were used to construct the matrimonial residence" on Mr. Mabray's separate property, based on his misreading of Mr. Mabray's 2015 deposition testimony.**

Mabray next contends that the trial court erred in awarding McSherry $125,000 for use of community funds in the enhancement of his separate property by constructing the matrimonial residence on his separate land. Mabray owns 6½ acres in Tensas Parish, Louisiana. After the parties married, they constructed the matrimonial residence on that property. The parties agree that the property, and now the residence, are Mabray's separate

11

property. As opposed to ownership of the asset, we are tasked with determining whether the trial court erred in fixing the amount awarded to McSherry for use of community funds in the improvement of Mabray's separate property.

On July 10, 1991, La. C.C. art. 2408 provided that McSherry would be entitled to an amount equal to one-half the enhanced value of the separate property or one-half of the amount of community funds expended on the improvement, whichever is greater. The record shows that McSherry took the lead role in purchasing materials, overseeing construction, and selecting various finishes for the residence. Additionally, she supervised the laborers and collected their invoices weekly and submitted them to Mabray for payment. Once completed, the home consisted of two stories, with the second floor being left unfinished. In 1982, the parties added a swimming pool, hot tub, deck, and patio. In 2009, long after the parties divorced, Mabray added two bedrooms and bathrooms to the second floor. The value of improvements made after the termination of community are not included in our review.

McSherry testified that the cost of construction was between $300,000 and $350,000 based on her observation of invoices and receipts that she transferred. Mabray testified that the construction cost of the original project was $160,000, which he claims he borrowed from Tensas State Bank, but could never produce evidence to support his assertion at trial. Mabray testified that in order to pay for the pool and additions, he sold some securities. As to the upstairs addition built in 2009, Mabray testified that it

12

cost an "additional hundred thousand dollars or so." Lastly, Mabray testified that he estimated the residence alone to have a value of $350,000.

The trial court determined that the home was worth $350,000, as per Mabray's own testimony, but credited Mabray $100,000 for cost of the upstairs additions to the home he made with his separate funds after the divorce, bringing the enhanced value of Mabray's separate property from community funds to $250,000. McSherry's claim to reimbursement of the enhanced value of Mabray's land from construction of the home would be one-half of the total or $125,000, as the trial court held. We cannot say, based on the record before us, that the trial court erred on this point, and Mabray's assignment of error is without merit.

**Assignment of Error Number 6:** **The trial judge committed legal error or manifest error in awarding Ms. McSherry an equalizing sum of $20,000 based on Ms. McSherry's testimony that the parties had purchased unspecified furniture and décor for $85,000 in 1979, with no detail of what the items of furniture and décor were or what community furniture or décor items she would contend were either left or remained in Mr. Mabray's possession.**

Mabray asserts that the trial court erred in awarding McSherry $20,000 for Mabray's retention of community furniture and décor located in the former matrimonial domicile. There is no disagreement between the parties that the furniture and décor contained in the former matrimonial domicile is community property. There is a dispute, however, between them as to what remains in the home and how to value those items. Such a dispute should be expected when, thirty years after being divorced, former spouses are reunited in the courtroom to contest the amount of money owed to the other. McSherry testified at trial that she left all furniture and décor in the home upon her departure and took only the items her mother had loaned

13

her. Mabray did not testify as to the furniture and décor either at trial or in his deposition. Therefore, the only evidence or testimony the trial court had at its disposal was that from McSherry, as well as a general understanding regarding the lifestyle of the parties and their financial position during the marriage when the furniture was purchased.

At trial, McSherry testified that the value of the furniture and décor was based on its purchase price in 1979 and her experience as a decorator. She valued the furniture and décor at $85,000. Although the court had the benefit of McSherry's testimony of the value of property in 1979, the trial court deviated significantly and assigned a value of her ownership interest of $20,000 and ordered the furniture and décor to remain with Mabray.

A trial court has much discretion in valuing and allocating assets and liabilities in community property partitions and must consider the source and nature of each asset or liability, the financial situation of the other spouse, and any other relevant circumstances. *Maxwell v. Maxwell*, 51,335 (La. App. 2 Cir. 4/5/17), 217 So. 3d 1227, *writ denied*, 17-0958 (La. 10/9/17), 227 So. 3d 830. The record on this particular issue is scant. The trial court used its broad discretion to determine that, because the furniture and décor was at least ten years old at the time the parties separated, it had a value of $40,000 and determined that McSherry was entitled to $20,000 for her share.

When the parties do not submit evidence of the current value of their community assets as of the time of trial, the trial court does not err in making its valuations based upon the evidence presented by the parties which values assets as of another date. *Ellington*, *supra*. Therefore, we

14

cannot say that the trial court erred in its valuation of the furniture and décor and affirm this decision. This assignment of error is without merit.

**Assignment of Error Number 7:** **The trial judge committed legal error or manifest error in awarding, and maintaining the awards to, Ms. McSherry of the amounts of $28,125; $56,250; $12,510; $12,510; $856.30; $12,388.46; $9,112.06; $17,908.37; and $28,794.96, which represented federal farm subsidies received by P & S Farms, a separate legal entity and partnership.**

Mabray next contends that the trial court erred in awarding McSherry various amounts for her interest in farm subsidy payments. P & S Farms Partnership ("P&S Farms") was formed on March 30, 1988, during the existence of the community. There were initially only two partners in P&S Farms: J. Patton Mabray and McMabes, Inc., a Louisiana corporation with Mabray as its president. It is clear, and the parties do not dispute, that the initial 50% interest in P&S held by Mabray was a community interest. Therefore, when the community terminated, McSherry became an owner of a 1/4 interest in P&S.

In 1993, Mabray added seven more partners to P&S so as to gain more money from the federal government for farm subsidies and for tax purposes. All terms of the partnership remained the same, but Mabray's interest was reduced to 11.11%. When the partnership automatically terminated by its terms in 1999, Mabray formed a new partnership bearing the same name on December 4, 1999. To this new partnership, he added eight other entities, but McSherry was not included as a partner. Her ownership interest in P&S ended in 1999.

During the years 1988 through 1993, Mabray received $225,000 per year in federal farm subsidies, which he applied to his farming debts. This is

15

shown by McSherry's production of records detailing such.[1]  The trial court correctly ruled that McSherry was entitled to her portion of the farm subsidies for years after the divorce but prior to the termination of P&S, being 1991 through 1999.  Additionally, the trial court correctly held that McSherry was not entitled to any portion of the farm subsidies after these dates, as P&S Farms had dissolved and re-formed as a wholly new partnership, unlike in 1993 when P&S simply added new members.  Therefore, we cannot say that the trial court erred in awarding McSherry her proportionate share of the farm subsidies in various amounts from years 1991 through 1999.  This assignment of error lacks merit.

**Assignment of Error Number 8:**     **The trial judge committed legal error or manifest error in awarding Ms. McSherry $10,000 "for her ownership interest in P & S Farms Partnership," based only on the first page of the 1999 partnership tax return.**

Mabray next asserts that the trial court erred in awarding McSherry $10,000 for her ownership interest in P&S Farms.  To extent that it is acquired during marriage, a spouse's interest in partnership is community asset; as such, a nonpartner spouse is entitled to one-half value of spouse's interest in partnership, as determined on date of trial.  *Borello v. Borello*, 614 So. 2d 91 (La. App. 4 Cir. 1993) (*on reconsideration*), *writ denied*, 616 So. 2d 706 (La. 1993).  The trial court's determination of the value of a community business is a factual one which will not be disturbed absent manifest error.  *Monje v. Monje*, 94-622 (La. App. 5 Cir. 12/28/94), 648 So. 2d 1086.

---

[1] Mabray testified that he received between $250,000 and $300,000 per year during this period.

Initially, the trial court valued P&S Farms at $73,000 based on an extrapolation method and viewing various tax return documents, wherein it determined the average total asset figure for the years 1993 through 1999 to be $73,609. Considering these figures, the trial court initially awarded McSherry $36,500 for her interest in P&S Farms. After a motion for new trial was heard, the trial court, after further review, reduced that amount to $10,000.

The court determined that the value of the community share of P&S Farms at the time the partnership dissolved in 1999 was $20,000 according to the first page of the partnership tax return for that year. Considering the foregoing, the broad discretion of the trial court in making factual determinations, and the lack of evidence in this matter, we cannot say that the trial court erred in its determination of a value of P&S Farms and its award to McSherry. This assignment of error lacks merit.

**Assignment of Error Number 9: The trial judge committed legal error or manifest error in awarding Ms. McSherry $100,000 for use of "farming equipment" with no evidence showing what farm equipment, if any, even existed 28 years later as of the time of the trial.**

Mabray next contends that the trial court erred in its award of $100,000 to McSherry for her interest in various farming equipment. When the parties do not submit evidence of the current value of their community assets as of the time of trial of the partition action, the trial court does not err in making its valuations based upon the evidence presented by the parties which values assets as of another date. *Ellington, supra*.

In her detailed descriptive lists, McSherry lists the following as community farm equipment: Combines and cotton pickers - $500,000; Tractors and trucks - $287,000; and Irrigation equipment - $45,000. She

17

testified that she priced the combines and cotton pickers after talking to a John Deere dealer in Newellton, Louisiana. Mabray initially stated that he was no longer in possession of the farming equipment and that the debt exceeded the value. In his second detailed descriptive list, he stated that he still had the equipment, but that he owed more on the equipment than it was worth. Mabray testified that, in 1991, he was receiving $25,000 per month by renting out his farming equipment to his own farming business, and after the divorce, he rented it to P&S Farms for between $100,000 and $225,000 per year. Mabray did not produce any evidence to show that this equipment was either encumbered by a lien or disposed of prior to the judgment of divorce on July 10, 1991. Considering the fact that both parties agree that the equipment exists but neither could provide a value, we cannot say that the trial court erred in awarding all farming equipment to Mabray and $100,000 to McSherry for her interest in same. This assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, we reverse the award to McSherry of $180,000 from income generated by Somerset Hunting Club but remand the matter to the trial court for a determination of the value of Somerset Hunting Club and the value of McSherry's interest therein; and in all other respects we affirm the judgment of the trial court. Costs are assessed to 20% to McSherry and 80% to Mabray.

**REVERSED AND REMANDED IN PART; AFFIRMED IN PART.**

18