Judgment rendered September 22, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,072-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CYNTHIA KAY KENNEDY                          Plaintiff-Appellant
CLOUD

versus

RICHARD DUANE CLOUD                          Defendant-Appellee

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2009-2827

Honorable Bernard S. Leehy, Judge

* * * * *

DONALD L. KNEIPP                             Counsel for Appellant

CYNTHIA KAY KENNEDY CLOUD                    In Proper Person,
                                             Appellant

BREITHAUPT, DUBOS,                           Counsel for Appellee
& WOLLESON, LLC
By: Robert Alan Breithaupt

* * * * *

Before MOORE, PITMAN, and HUNTER, JJ.

**HUNTER, J.**

The plaintiff, Cynthia Kennedy (formerly Cloud), appeals a judgment partitioning the community property after her divorce from the defendant, Richard Cloud. The trial court found Richard's interest in Cumulus Assets, LLC, was his separate property, Cynthia owed reimbursement to Richard in the amount of $403,980.72, and ordered the community's former interest in Capital Innovations, LLC, be conveyed to North Louisiana Bidco, LLC, in full liquidation of same. For the following reasons, we affirm.

## FACTS

In May 1980, Cynthia and Richard Cloud were married in North Carolina. In 2002, the Clouds established their matrimonial domicile in Louisiana. In December 1996, Richard and his three siblings, acting as settlors, created the Cloud Family Trust. In December 2005, Richard and his siblings signed the articles of organization of Cumulus Assets, LLC ("Cumulus"), a company formed by their father, Duane Cloud. In August 2009, Cynthia filed a petition for divorce.

In March 2010, a judgment of divorce was signed. The trial court later rendered an amended divorce judgment allowing Cynthia to resume the use of her maiden name "Kennedy." After a hearing officer conference in January 2014, the hearing officer filed a report regarding Cynthia's rule to allocate the use of community funds. In July 2014, the trial court appointed a special master, whose appointment was terminated in May 2017. In January 2018, Richard filed a sworn detailed descriptive list and Cynthia filed a detailed descriptive list in February 2018. Each party then filed a traversal of the other's descriptive list.

A trial on the partition of community property was held in July 2019, and the trial court heard oral argument in January 2020. Subsequently, the trial court issued written reasons for judgment discussing the formation of Cumulus and finding Richard's interest in the company was his separate property. The trial court rendered judgment allocating the assets and debts of the parties, ordering Cynthia to make an equalizing payment in the amount of $403,980.72 to Richard and ordering the community's former interest in Capital Innovations, LLC, be conveyed to North Louisiana Bidco, LLC, in liquidation of the interest. Cynthia appeals the judgment.

**DISCUSSION**

The plaintiff, Cynthia Kennedy, contends the trial court erred in finding the ownership interest in Cumulus was the separate property of defendant, Richard Cloud. Plaintiff argues defendant failed to rebut the presumption an asset which existed during the community regime is community property.

Community property comprises property acquired during the existence of the legal regime through the effort or skill of either spouse, property acquired with community things or with community and separate things, property donated to the spouses jointly and all other property not classified by law as separate property. La. C.C. art. 2338. Things in the possession of a spouse during the regime of community of acquets and gains are presumed to be community, but either spouse may prove a thing is separate property. La. C.C. art. 2340. The community presumption is rebuttable upon a showing by a preponderance of the evidence the separate nature of the property. *Talbot v. Talbot*, 2003-0814 (La. 12/12/03), 864 So. 2d 590. Separate property includes property acquired by a spouse prior to

2

the establishment of a community property regime, property acquired by a spouse with separate things and property acquired by inheritance or donation to a spouse individually. La. C.C. art. 2341.

In this case, plaintiff points out Cumulus was formed during the community property regime and argues defendant's position as a manager of Cumulus means his skill and effort were used in operating the company. However, the evidence shows Duane Cloud, who was listed as co-manager of Cumulus, actually carried out the transactions involving Cumulus and was the source of all the property held by the company. The record contains a number of assignments and acts of donation transferring mineral interests of Duane and Martha Cloud to Cumulus and company tax returns for the years 2007 to 2009 show all of the assets held by Cumulus were the result of property transfers from Duane and Martha Cloud.

Additionally, John Campbell testified by deposition he performed legal work to assist Duane Cloud to create the Cloud Family Trust and Cumulus for estate planning purposes. Campbell stated Duane Cloud wanted to transfer assets to his descendants while he was alive and he conveyed property to Cumulus for that reason. Campbell testified to his knowledge all of the assets held by Cumulus had been received from Duane and Martha Cloud and none of the property had been contributed by defendant. Thus, defendant produced evidence demonstrating his effort was not involved in acquiring the property of Cumulus and no community funds were transferred to the company.

Plaintiff also argues an email she received from defendant in June 2009, regarding his deposit of funds which had been repaid to Cumulus, shows the company was treated as a community interest. However, the

3

referenced email describing defendant's decision to give plaintiff one-half of funds he received from Cumulus on one occasion does not tend to prove defendant's interest in Cumulus is community property when considered in light of the record as a whole.

After hearing the witness testimony and weighing the evidence, the trial court found Cumulus was created as a means of estate planning whereby Duane and Martha Cloud donated their property to defendant and their other children. Property acquired by a spouse by donation to him individually is deemed his separate property. After reviewing this record, we cannot say the trial court erred in determining the evidence presented was sufficient to overcome the presumption of community and to establish defendant's interest in Cumulus as his separate property. Thus, the assignment of error lacks merit.

*Allocation of Nephos*

Plaintiff contends the trial court erred in failing to assign a value to Nephos, LLC ("Nephos"), and to allocate the company to defendant. Plaintiff argues the trial court's division in kind of the community's interest in Nephos does not achieve finality in the partition of community property.

In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse and any other circumstances the court deems relevant. La. R.S. 9:2801(A)(4)(c). A trial court has much discretion in valuing and allocating assets and liabilities in a community property partition. *Reagan v. Reagan*, 52,080 (La. App. 2 Cir. 6/27/18), 250 So. 3d 1122.

4

In this case, the evidence presented shows Nephos was a holding company for the community's 25% interest in North Louisiana Bidco, LLC ("NLB"), a company which had operated under a legislative scheme allowing certain lenders to obtain tax credits as an incentive to make high-risk loans to businesses in economically disadvantaged areas. For a time, NLB was successful in raising funds to make loans and generate substantial sums for distribution to Nephos and then to the community. However, when this incentive program expired there was a lack of investors and NLB ceased making loans. As a consequence, at the time of the partition trial NLB was in a winding-down stage primarily involving efforts to collect payment of nonperforming loans. Thus, the value of Nephos was uncertain at the time of trial because it was not known how much of the outstanding loans could be collected by NLB to enable distributions to its members, including Nephos.

After considering the existing circumstances, the trial court divided in kind equally to the parties the community's 98% interest in Nephos. As a result, plaintiff and defendant each own 49% of Nephos and will receive the same amount of any distributions from Nephos in the future. We note this outcome is consistent with the parties' equal sharing of distributions from Nephos during the divorce proceedings.

Based upon this record and the applicable law, we conclude the trial court acted within its discretion in ordering the partition in kind of the ownership interest in Nephos. Thus, the assignment of error lacks merit.

*Duty to Preserve the Community*

Plaintiff contends the trial court erred in failing to find defendant breached his duty to preserve the community. Plaintiff argues defendant is

5

liable for her financial loss caused by the decrease in value of NLB because he failed to prudently administer the former community property.

A spouse has a duty to preserve and manage prudently former community property under his control in a manner consistent with the mode of use of such property prior to termination of the community regime. He is answerable for any damage caused by his fault or neglect. La. C.C. art. 2369.3. A spouse who asserts a claim under Article 2369.3 has the burden of proving the other spouse failed to act prudently to manage and preserve the community property prior to partition. *Ellington v. Ellington*, 36,943 (La. App. 2 Cir. 3/18/03), 842 So. 2d 1160, *writ denied*, 2003-1092 (La. 6/27/03), 847 So. 2d 1269. The trial court's determination as to the merit of the claim of mismanagement of community assets is subject to the manifest error standard of review. *Ellington, supra*.

In this case, plaintiff introduced into evidence financial statements prepared by defendant showing NLB with a value of $26,356,187 in November 2009, a value of $14,366,231 in December 2012, and a value of $5,026,017 in May 2017. Plaintiff also points out three companies, in which defendant held an ownership interest, failed to repay loans in the total amount of $6,173,119. Plaintiff asserts the decline in the value of NLB and the unpaid loans indicate defendant failed to prudently manage community property under his control.

However, the testimony demonstrates factors other than mismanagement were the cause of the reduction in NLB's value and the unpaid loans. Plaintiff's valuation expert, David Johnston, acknowledged the approximately $8 million in distributions which NLB made to its

6

members and the $12 million in charge-offs for nonperforming loans from 2009 to 2018 would be reasons for the decline in NLB's value over time.

Regarding the operation of NLB, defendant's valuation expert, Benjamin Woods, testified NLB was formed as a business and industrial development company ("Bidco") and a certified capital company ("Capco") under legislation seeking to increase economic development. Woods explained these entities gathered funds to make loans to undercapitalized businesses in economically distressed areas. Woods stated part of the law allowed insurance carriers to invest in a Bidco/Capco, such as NLB, in return for state tax credits and the resulting investment "pools" needed to be decertified by NLB through making qualifying loans so capital could be distributed to its members.

Woods testified the law allowed NLB to take an equity ownership interest in a company to which it was loaning money to help the company qualify for a loan. Woods stated these related party loans helped NLB to make qualifying loans and decertify the investment pools. Woods explained almost all lenders like NLB began to wind down after 2010 when the legislation providing tax credits expired and as a result NLB now has mainly nonperforming loans which are difficult to collect. Woods stated during the stage of winding down, NLB has been collecting loans and distributing money to its members so one would expect the total equity of NLB to decline over time.

Richard Cloud testified related party loans were permitted under the Bidco/Capco legislation. Cloud stated the related party loans to the companies at issue were made in an effort to help the businesses become profitable, but also to enable NLB to decertify millions of dollars in the

7

investment pools and thereby make cash distributions to its members, including Nephos.

Although the value of NLB declined from 2009 to 2018 as shown by plaintiff, the record does not support plaintiff's assertion such a decline in value was caused by defendant's mismanagement. Rather, the trial court heard testimony explaining such a reduction in value was to be expected given the winding down of NLB's operation, the difficulty in collecting higher risk loans and the distribution of significant funds to NLB's members. These distributions enabled Nephos to make substantial cash distributions to the community. We note Nephos distributed approximately $827,000 to plaintiff from the filing of the divorce petition in August 2009 to the time of trial in July 2019.

Based upon the evidence presented, plaintiff has not satisfied her burden of proving defendant failed to act prudently in a manner consistent with the mode of use of the community property under his control prior to the termination of the regime. Thus, we cannot say the trial court erred in denying plaintiff's claim alleging defendant failed to preserve community property. The assignment of error lacks merit.

*Valuation of Capital Innovations, LLC*

Plaintiff contends the trial court erred in assessing a value of zero to Capital Innovations, LLC, a community asset. Plaintiff argues the trial court should have accepted her expert's valuation of the company.

Generally, the trier of fact is entitled to hear and weigh expert testimony in the same manner as any other evidence. Reasonable and well-founded opinion should be considered. *Ellington, supra.* The effect and weight to be given an expert's testimony depends upon the validity of the

8

underlying facts relied upon by the expert and rests within the broad discretion of the trial court. *Ellington, supra.*

In this case, the record shows Capital Innovations, LLC ("Capital Innovations"), is a holding company which owns interests in Acadiana Building Components ("Acadiana"), Craig Taylor, Inc. ("CTI"), and Universal Electric Supply, LLC ("Universal"). Plaintiff's expert, Johnston, testified he estimated the value of Capital Innovations using the total values of the companies as of 2009. Johnston stated he determined the value of Acadiana by taking the assets listed in the 2009 tax return and adding back the amount of depreciation for a building it owned. Johnston testified for the values of CTI and Universal, he took the assets listed on their 2009 tax returns and added back the amount of the loan each owed to NLB, making the assumption CTI and Universal would not need to repay those loans, based on their reserve status noted in a 2018 audit report for NLB. However, Johnston stated in determining the value for these companies in 2018, he did not add back the loan amounts but instead accepted the report of Woods, who assessed Acadiana, CTI and Universal with zero value. Treating each company's outstanding debt as an asset, Johnston opined Capital Innovations' value was $3,054,311, based on the estimated values of the companies.

Defendant's valuation expert, Woods, testified he determined the value of the three companies as of December 2017. Woods stated his analysis indicated Acadiana, CTI and Universal each had negative member equity and as a result, the value of each company was zero. Woods explained the value of Capital Innovations, as a holding company, was based on the value of its investments. Woods opined in this situation, the value of

Capital Innovations was zero, based on the negative equity of each company in which it held an interest.

The trial court shall value the community assets at the time of trial on the merits, determine the liabilities and adjudicate the claims of the parties. La. R.S. 9:2801(A)(4)(a). In determining the value of the community assets, the trial court considered the opinions of the experts and the documentary evidence presented. The testimony demonstrates the experts agreed Capital Innovations held interests in companies with zero value at the time of the partition trial.

Based upon the evidence contained in this record, we cannot say the trial court erred in assessing Capital Innovations with zero value. Thus, the assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal are assessed to the appellant, Cynthia Kennedy (formerly Cloud).

**AFFIRMED.**